IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br>   Plaintiff,<br><br>v.<br><br>NEWKUMET EXPLORATION, INC. AND NEI, LTD.,<br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    CIVIL ACTION NO. 7:24-cv-206 |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

St. Paul Fire and Marine Insurance Company ("St. Paul") brings this suit for declaratory judgment that it has no duty to defend or indemnify Newkumet Exploration, Inc. ("Newkumet") or NEI, Ltd. ("NEI") (individually and collectively the "Newkumet Defendants"), as further set forth herein.

## I.
## PARTIES

1. Plaintiff St. Paul Fire and Marine Insurance Company is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut.

2. Defendant Newkumet is a Texas corporation with its principal place of business is in Midland, Texas. Newkumet may be served through its registered agent and governing person, Wayne Newkumet, at 550 West Texas, Suite 200 Midland, Texas 79701, or wherever he may be found.

3. Defendant NEI is a Texas corporation with its principal place of business is in Midland, Texas. NEI may be served through its registered agent and governing person, Wayne Newkumet, at 500 West Texas, Suite 1410 Midland, TX 79701, or wherever he may be found.

## II.
## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and 1367. Complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The Newkumet Defendants are subject to personal jurisdiction because each maintains continuous and systematic contacts with the State of Texas and the claims asserted herein arise out of its contacts with the State of Texas.

6. Venue is proper in the Western District of Texas, Midland Division pursuant to 28 U.S.C. Section 1391 because the Newkumet Defendants are residents of this District.

## III.
## FACTUAL BACKGROUND

**A.      The St. Paul Policy**

7. St. Paul issued Energy Pro insurance package bearing Policy Number ZPP-51M53687 to the Newkumet Defendants (the "Policy"). The Policy was effective February 15, 2017 to February 15, 2018 (the "Policy Period").

8. The Policy includes oil and gas commercial general liability protection and oil and gas umbrella excess liability protection that provides certain insurance coverage subject to the terms, conditions and exclusions of the Policy. The Policy provides coverage "for amounts [the Newkumet Defendants are legally obligated to pay as damages for covered … property damage" that happens during the Policy Period and "is caused by an event," but only if such covered property damages results from "your work or your completed work in the performance of your oil

or gas operations ….." The Policy defines "event" as an "an accident," including "continuous or repeated exposure to substantially the same general harmful conditions; and a sudden and accidental pollution incident."

9. The Policy contains an exclusion for pollution injury or damage, which excludes coverage for property damage that results from pollution. "Pollution" is defined as "any actual, alleged, or threatened discharge, dispersal, escape, migration, release, or seepage of any pollutant." "Pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including [i] smoke, vapors, soot, fumes; [ii] acids, alkalis, chemicals; and [iii] waste."

10. The pollution injury or damage exclusion has an exception for property damage that results from a "sudden and accidental pollution incident," which is defined to mean "the discharge, escape, or release of a pollutant that:

- is sudden and accidental;
- is first known within 30 days of its beginning by you or any of your employees, your operating agent or any of its employees . . .;
- any protected person [or] your operating agent … attempts to end as soon as possible after it first becomes known …; and
- is reported to us under this agreement within 90 days after it first becomes known to you or any of your employees, your operating agent or any of its employees …."

"Sudden means abrupt and immediate," and "accidental means unexpected and unintended." "Your operating agent means any person or organization that has agreed with you or your co-owner to operate[] any oil or gas lease or well you own; or []any other well that's part of operations for any oil or gas lease or well you own …."

11. The Policy also provides coverage for certain "pollution clean-up costs," but only if such costs are incurred for a "sudden and accidental pollution incident." In addition to the requirements above for a "sudden and accidental pollution incident," pollution clean-up costs must

be incurred for a sudden and accidental pollution incident that "begins on a specific date and at a specific time while this agreement is in effect."

**B.    The Underlying Lawsuit**

12.    On or about May 31, 2019, several landowners filed suit against the Newkumet Defendants and other operators and service companies alleging that the defendants were liable for pollution that contaminated the plaintiffs' property and groundwater (the "Underlying Lawsuit").[1] In the First Amended Petition, the plaintiffs allege that "pollution was released from" a "pipeline and wastewater injection facility" (the "injection well") located on the plaintiffs' property (the "Ledgerwood Property"), which "contaminated Plaintiffs' soil and groundwater, including their water well."  The plaintiffs allege they "discovered a release of pollution from the injection well" on June 15, 2017.  The plaintiffs allege that the "release of deleterious substances from the injection well and the resulting soil and water contamination and pollution on the Plaintiffs' property have caused and will cause damages to Plaintiffs' Property, wrongful injuries to timber on Plaintiffs' Property, and personal annoyance, inconvenience, aggravation and emotional distress."

13.    Defendant Southcreek Petroleum Co. ("Southcreek") is alleged to be the designated operator of certain oil and gas leases in which the Newkumet Defendants are alleged to own working interests.

14.    The Underlying Lawsuit alleges that Southcreek knew "Plaintiffs' water well had been contaminated," but "Southcreek failed to investigate adequately and failed to restore a potable water source" until "almost two years after the spill occurred."  It is further alleged that the

---

[1] The Underlying Lawsuit is styled *Stan Ledgerwood, Tina Ledgerwood, Don Ledgerwood, Shirley Ledgerwood, and Ledgerwood Family Farm, LLC v. Southcreek Petroleum Co., LLC, Newkumet Exploration, Inc., NEI, Ltd., Wise Oil & Gas No. 10 Ltd., East Story Gibson Sand Unit, Balon Corporation, and Arrow Pump & Supply of Seminole, LLC*; Case No. CJ-19-84; In the District Court of Garvin County, State of Oklahoma.

Newkumet Defendants failed to use proper care in the design, installation, operation and/or maintenance of the injection well, resulting in the contamination and pollution of the plaintiffs' property. As a result of the pollution release, the Underlying Lawsuit alleges that "the Plaintiffs have suffered damages to their property in the way of stigma, clean-up costs, damages to grasses, contamination of their groundwater, damages to personal property, and diminution in value of the property." The Underlying Lawsuit asserts claims against the Newkumet Defendants for negligence, negligence per se, trespass, permanent injury, private nuisance, public nuisance, breach of contract, and punitive damages.

**C.    The Policy does not afford coverage for the Underlying Lawsuit.**

15.    The Underlying Lawsuit is not covered under the express terms of the Policy, and therefore, St. Paul has no duty to defend or indemnify the Newkumet Defendants in connection with the Underlying Lawsuit.

16.    For example, while the Policy provides coverage for property damage resulting from pollution and pollution clean-up costs, the pollution incident giving rise to the property damage or pollution clean-up costs must result from a "sudden and accidental pollution incident." In this case, the alleged property damage and/or pollution clean-up costs did not result from an incident that meets the requirements of a "sudden and accidental pollution incident."

17.    The Policy defines a "sudden and accidental pollution incident" to mean:

[T]he discharge, escape, or release of a pollutant that:

- is sudden and accidental;

- is first known within 30 days of its beginning by you or any of your employees, your operating agent or any of its employees, your pump-gauger or any of its employees, or any other applicable person or organization;

- any protected person, your operating agent, or your pump-gauger attempts to end as soon as possible after it first

> becomes known by your or any of your employees, your operating agent or any of its employees, or your pump-gauger or any of its employees; and
>
> - is reported to us under this agreement within 90 days after it first becomes known to you or any of your employees, your operating agent or any of its employees, your pump-gauger or any of its employees, or any other applicable person or organization.

18. Some or all of these requirements for coverage are not met here.

19. For example, it is alleged that the spill occurred on or before June 15, 2017—the date the spill was "discovered" by the landowner plaintiffs. It is further alleged that the property owners informed Southcreek of the pollution incident on that same day. However, the Newkumet Defendants did not provide notice of the pollution release to Travelers until or about January 2, 2019, well beyond the ninety-day notice requirement.

20. The following exclusions in the Policy may also apply to bar or limit coverage for the Underlying Lawsuit:

- Expected or intended property damage;
- Pollution clean-up costs that result from your products;
- Pollution work loss, cost, or expense; and/or
- Contractual liability.

21. Coverage may also be barred or limited to the extent that any damages alleged or sought against or recovered from the Newkumet Defendants are not damages covered under the Policy and/or applicable law, including without limitation punitive damages.

22. Despite there being no coverage for the Underlying Lawsuit, St. Paul agreed to provide a courtesy defense to the Newkumet Defendants in the Underlying Lawsuit under a full reservation of rights.

23. St. Paul now seeks a declaratory judgment that it has no duty to defend and, for the same reasons, no duty to indemnify the Newkumet Defendants for the Underlying Lawsuit under the Policy.

## IV.
## CLAIM FOR DECLARATORY RELIEF

24. St. Paul incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein.

25. An actual case or controversy exists between St. Paul and the Newkumet Defendants regarding the availability, if any, of insurance coverage for the Underlying Lawsuit under the Policy.

26. Accordingly, St. Paul seeks a declaration as to the parties' rights and obligations under the Policy with regard to the Underlying Lawsuit, including but not limited to, a declaration that St. Paul owes no duty to defend the Newkumet Defendants with regard to the Underlying Lawsuit and, for the same reasons St. Paul owes the Newkumet Defendants no duty to defend, St. Paul owes no duty to indemnify the Newkumet Defendants with regard to the Underlying Lawsuit.

## V.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, St. Paul respectfully prays that the Court declare the rights and obligations of St. Paul and the Newkumet Defendants under the Policy and applicable law relating to the Underlying Lawsuit and further award St. Paul any and all other relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Courtney Ervin*
Courtney Ervin
Texas Bar No. 24050571
cervin@hicks-thomas.com
HICKS THOMAS LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**ATTORNEYS FOR ST. PAUL FIRE AND MARINE INSURANCE COMPANY**